UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF INDIANA
SOUTH BEND DIVISION

BERNELL HILL,

    Plaintiff,

    v.                                     CAUSE NO.: 3:24-CV-22-PPS-APR

WARDEN,

    Defendant.

OPINION AND ORDER

Bernell Hill, a prisoner without a lawyer, moves for a preliminary injunction. (ECF 1.) I ordered a response to the motion by the Warden of Westville Correctional Facility, which has now been filed. (ECF 10.)

"[A] preliminary injunction is an extraordinary and drastic remedy, one that should not be granted unless the movant, *by a clear showing*, carries the burden of persuasion." *Mazurek v. Armstrong*, 520 U.S. 968, 972 (1997) (emphasis in original) (citation omitted). "A plaintiff seeking a preliminary injunction must establish that he is likely to succeed on the merits, that he is likely to suffer irreparable harm in the absence of preliminary relief, that the balance of equities tips in his favor, and that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008).

On the first prong, "the applicant need not show that [he] definitely will win the case." *Illinois Republican Party v. Pritzker*, 973 F.3d 760, 763 (7th Cir. 2020). However, "a mere possibility of success is not enough." *Id.* at 762. "A strong showing . . . normally includes a demonstration of how the applicant proposes to prove the key elements of its

case." *Id*. at 763 (quotation marks omitted). In assessing the merits, I do not simply "accept [the plaintiff's] allegations as true" or "give him the benefit of all reasonable inferences in his favor, as would be the case in evaluating a motion to dismiss on the pleadings." *Doe v. Univ. of S. Indiana*, 43 F.4th 784, 791 (7th Cir. 2022). Instead, I must make an assessment of the merits as "they are likely to be decided after more complete discovery and litigation." *Id.*

On the second prong, "[i]ssuing a preliminary injunction based only on a possibility of irreparable harm is inconsistent with . . . injunctive relief as an extraordinary remedy that may only be awarded upon a clear showing that the plaintiff is entitled to such relief." *Winter*, 555 U.S. at 22. Mandatory preliminary injunctions—"those requiring an affirmative act by the defendant"—are "cautiously viewed and sparingly issued." *Mays v. Dart*, 974 F.3d 810, 818 (7th Cir. 2020). Additionally, in the prison context, my ability to grant injunctive relief is limited. "[I]njunctive relief to remedy unconstitutional prison conditions must be narrowly drawn, extend no further than necessary to remedy the constitutional violation, and use the least intrusive means to correct the violation of the federal right." *Westefer v. Neal*, 682 F.3d 679, 681 (7th Cir. 2012) (citation and internal quotation marks omitted); *see also Rasho v. Jeffreys*, 22 F.4th 703, 711-13 (7th Cir. 2022) (outlining strict limitations on granting injunctive relief in correctional setting).

As outlined in the screening order, Mr. Hill claims to have an intestinal disorder that is causing him abdominal pain, diarrhea, and other symptoms. He is proceeding

solely on a claim against the Warden in his official capacity for prospective injunctive relief. (ECF 3.)

Inmates are entitled to adequate medical care under the Eighth Amendment. *Estelle v. Gamble*, 429 U.S. 97, 104 (1976). To prove an Eighth Amendment violation, a prisoner must demonstrate (1) he had an objectively seriously medical need and (2) the defendant acted with deliberate indifference to that medical need. *Id.* A medical need is "serious" if it is one that a physician has diagnosed as mandating treatment, or one that is so obvious even a lay person would recognize as needing medical attention. *Greeno v. Daley*, 414 F.3d 645, 653 (7th Cir. 2005). Inmates are "not entitled to demand specific care," *Walker v. Wexford Health Sources, Inc.*, 940 F.3d 954, 965 (7th Cir. 2019), nor are they entitled to "the best care possible." *Forbes v. Edgar*, 112 F.3d 262, 267 (7th Cir. 1997). Rather, they are entitled to "reasonable measures to meet a substantial risk of serious harm." *Forbes*, 112 F.3d at 267. Negligence or medical malpractice does not establish an Eighth Amendment violation. *Walker*, 940 F.3d at 965. Instead, courts "defer to medical professionals' treatment decisions unless there is evidence that no minimally competent professional would have so responded under those circumstances." *Id.* (citation and internal quotation marks omitted).

The Warden argues that preliminary injunctive relief is not warranted and has submitted Mr. Hill's medical records in support. (ECF 10; ECF 10-1.) Those records reflect that Mr. Hill is 46 years old and suffers from several chronic conditions including diabetes, hypertension, hyperlipidemia, gastroesophageal reflux disease ("GERD"), and multiple food allergies. (ECF 10-1 at 1-126.) He is on a number of daily medications for

3

these conditions, including insulin. (*Id.*) The records also reflect that he suffers from obesity and that his diabetes has not always been controlled, in part due to his food choices. (*Id.* at 98.)

Mr. Hill arrived at the Indiana Department of Correction's intake facility, the Reception Diagnostic Center ("RDC"), on November 20, 2023. (ECF 10-1 at 9.) At that time, medical staff completed an initial medical assessment. (*Id.* at 9-16.) In addition to his chronic conditions, he reported having suffered from excessive gas for the past two years. (*Id.* at 9.) A diabetic diet was ordered to accommodate his diabetes. (*Id.* at 16.) On November 27, 2023, he had a visit with a nurse practitioner. (*Id.* at 17-20.) He reported that his GERD began six years earlier and was aggravated by "fatty foods, large meals, and spicy foods." (*Id.* at 17.) He also reported bloating, diarrhea, and abdominal pain from eating peanuts, yeast, milk, and other foods. He reported having "8 stools today, all diarrhea." *Id.* He told her that probiotics had helped in the past. She prescribed a number of medications, including a probiotic and a five-day course of Imodium.[1] (*Id.* at 22.) She also counseled him on his eating habits, telling him to avoid certain foods, decrease his intake of salt and carbohydrates, increase his fluids, eat small meals, and avoid eating three hours before bedtime. (*Id.* at 20-21.)

He had a nurse visit on November 29, 2023, in which he reported that he had diarrhea due to eating certain foods. (*Id.* at 23.) The nurse referred him to the doctor for

---

[1] This drug is referred to in his medical records by its generic name, loperamide. *See* Physician's Desk Reference, Loperamide. *https://www.pdr.net/browse-by-drug-name?search=loperamide* (last visited Feb. 28, 2024).

4

diet sensitivity testing. (*Id.* at 29.) He saw the nurse practitioner on November 30 and reported that since he started taking Imodium he had not had a bowel movement in four days. (*Id.* at 27.) The nurse practitioner adjusted his insulin and ordered laboratory testing, including a radioallergosorbent ("RAST") test to check for food allergies. (*Id.* at 28-30.) On December 7, he saw a doctor and reported diarrhea and excessive gas; he felt the Imodium had helped in the past, so the doctor renewed this medication. The doctor also prescribed a fiber supplement and ordered a stool culture and an abdominal x-ray. (*Id.* at 33.) His opinion was that Mr. Hill was suffering from irritable bowel syndrome (IBS). (*Id.* at 35.) The abdominal x-ray was completed the following day and revealed normal soft tissue and an "unremarkable" gas pattern. (*Id.* at 37.) The stool culture also returned negative for abnormalities. (*Id.* at 82.)

On December 10, 2023, he reported to a nurse that he was having diarrhea. (*Id.* at 38.) He reported that he was "still feeding the problem" because, in his words, he sometimes "ha[d] to eat the things I'm allergic to." (*Id.*) She gave him a topical rectal cream to address irritation and stated that she would refer him to the doctor. (*Id.* at 39.) In the interim, he saw another nurse and requested a lactose-free diet. (*Id.* at 40.) She told him that RDC did not have a lactose-free diet option but that a "possible solution is being investigated." (*Id.* at 41.) She told him that dietary staff would "be in touch" and that "very few dairy products" would be offered to him in the interim. (*Id.*) He saw a nurse again on December 15 and reported excess gas; the nurse referred him to the doctor to discuss his medications. (*Id.* at 42-43.) Before the visit with the doctor could occur, however, Mr. Hill was transferred to Westville. (*Id.* at 45.)

Mr. Hill arrived at Westville on December 20, 2023. (*Id.*) A medical intake was completed by staff and his medications were renewed, including the probiotic, fiber supplement, and Imodium. (*Id.* at 46-47.) On December 29, he filed a grievance stating that he was having diarrhea, which he attributed to eating beans. (*Id.* at 60.) He was told that he had an upcoming visit scheduled with a doctor and could address the issue then. (*Id.*) He saw a nurse on January 2, 2024, and reported that he was still having diarrhea. (*Id.* at 80.) The nurse contacted the nurse practitioner, who reordered the RAST test which had not been completed when he was at RDC and prescribed Tylenol for pain. (*Id.* at 82.)

Later that day, Mr. Hill initiated this lawsuit claiming that he was not receiving proper medical care for gastrointestinal issues.[2] (ECF 1.) Two days later, he was admitted to the prison infirmary. (ECF 10-1 at 85.) While there he was given a variety of treatments, including a clear liquid diet, intravenous medications, and Imodium. He also underwent laboratory testing. (*Id.* at 85-97, 105, 106-126.) On January 5, he reported that he had not had diarrhea since the day before, was feeling better, and was ready to return to his dormitory. (*Id.* at 120.) His medications were continued, and he was counseled on his diet and told to follow-up with the doctor in a week. (*Id.* at 122.) He was then discharged from the infirmary.

---

[2] His case-initiating documents were received by the clerk on January 8, 2024, but he signed and dated them on January 2. (ECF 1 at 4.) Under the prison mailbox rule, his documents are deemed "filed" when he tenders them to prison officials. *Houston v. Lack*, 487 U.S. 266 (1988).

6

On January 16, 2024, he was seen by a nurse practitioner and reported that he was "much improved now." (*Id.* at 98.) She opined that his stay in the infirmary had been caused by acute gastroenteritis, which had since improved. (*Id.*) She indicated that she intended to put in an order for colonoscopy. (*Id.*) Her notes also reflect that Mr. Hill told her he "now wants a Kosher diet" rather than his diabetic diet; she discussed his diet with him but noted that he was "not willing to reduce carb intake." (*Id.* at 99.) She reviewed his medications and adjusted his insulin, ordered additional laboratory testing, and told him to follow up in a month. (*Id.* at 101.)

It is evident from these records that Mr. Hill has serious medical needs, but at the same time, they reflect that medical staff at Westville have taken his medical issues seriously and diligently tried to address his stomach problems. When he arrived at Westville he had just undergone an abdominal x-ray and a stool culture, both of which were unremarkable. Since his arrival at Westville a little over two months ago, he has received inpatient care in the prison infirmary, laboratory testing, and a number of medications to address his stomach symptoms. Records reflect that further treatment is anticipated in the form of a colonoscopy.

It appears that Mr. Hill's care presents challenges, as he has a myriad of health issues that necessitate him taking a number of daily medications. He has also been counseled on his diet, as his symptoms appear to flare up in part based on his eating, which is not something that is totally within the control of medical staff. It is unfortunate that he has experienced these symptoms, but he has not demonstrated a likelihood of success on his claim that medical staff are acting with deliberate

7

indifference to his medical needs, nor has he demonstrated that he will suffer irreparable injury if he is not granted immediate injunctive relief.

For these reasons, the plaintiff's motion for a preliminary injunction (ECF 1) is DENIED.

SO ORDERED.

ENTERED:  March 5, 2024.

>  /s/   Philip P. Simon
> PHILIP P. SIMON, JUDGE
> UNITED STATES DISTRICT COURT